UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FATIMA CARRASCO, et al.,

        Plaintiffs,

    v.

FREUDENBERG HOUSEHOLD PRODUCTS LP,

        Defendant.

No. 18 CV 3591

Judge Manish S. Shah

## ORDER

Defendant's motion to dismiss count IV of the second amended complaint, [73], is granted. Count IV of the second amended complaint is dismissed without prejudice.

## STATEMENT

Plaintiff Fatima Carrasco (on behalf of herself and a conditionally certified collective action of opt-in plaintiffs) alleges that her former employer, defendant Freudenberg Household Products LP, promised her (and her former coworkers) that they would be paid for time they were required to be at work even if they were not actively working. [66] ¶¶ 23, 54–56.[1] She points out that Freudenberg made that promise in its employee handbook, [66] ¶ 55, and does not rule out the possibility that Freudenberg made that same promise somewhere else (e.g., in some other document or via verbal statements or courses of conduct). *See id.* ¶¶ 51–62. Instead of delivering on that promise, Carrasco says that Freudenberg "shav[ed] employee's time clocks" and "shaved time from its employees' paychecks" in violation of the Illinois Wage Payment and Collections Act. [66] ¶¶ 52, 59, 61, 62 (citing 820 Ill. Comp. Stat. 115/4, 115/9).

In her response ([81][2]) to Freudenberg's motion to dismiss that claim under Federal Rule of Civil Procedure 12(b)(6), [73], Carrasco elaborates on those

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the second amended complaint, [66], Carrasco's response to Freudenberg's motion to dismiss, [81], and the attachments thereto. [81-1]; [81-2]; [81-3]; [83].

[2] A party opposing a motion to dismiss may "submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("a plaintiff is free, in defending against a motion to dismiss, to allege without

allegations. She says that Freudenberg had a policy of rounding clock-in and clock-out times to the nearest ten-minute increment. [82] at 3–4; [83] at 5–7. She also attaches archived time card reports that show occasional inconsistencies in the way that policy was being implemented. [81-2]. For instance, on at least one occasion, an employee that clocked in at 1:51 p.m. and clocked out at 10:08 p.m. was credited with eight hours and ten minutes of time spent working. *See* [81-2] at 1. On another occasion, an employee that clocked in at 1:48 p.m. and out at 12:00 a.m. was credited with exactly ten hours of time spent working. *Id*. at 2. Carrasco says these instances of rounding error are representative, not exhaustive. [81] at 3–4.

A complaint must contain a short and plain statement that plausibly suggests a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, although a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, the court need not do the same for legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Ashcroft*, 556 U.S. at 678, 80–82. A claim does not need to "include every detail or fact" relevant to the allegation, but must "present a story that holds together." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018). *See also Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018), *cert. denied,* 139 S. Ct. 2745 (2019) (the complaint must "provide some factual context that will nudge [the] claim from conceivable to plausible"). I have jurisdiction to hear Carrasco's claim under the Fair Labor Standards Act because it arises under federal law, 29 U.S.C. §§ 201–219; 28 U.S.C. § 1331, and supplemental jurisdiction over Carrasco's Wage Payment and Collections Act claim under 28 U.S.C. § 1367(a).

The Wage Payment and Collections Act requires that wages be paid within proscribed periods of time. 820 Ill. Comp. Stat. Ann. 115/4. *See also Enger v. Chicago Carriage Cab Corp.,* 812 F.3d 565, 567 (7th Cir. 2016) (employees may sue their employers under the Act if their employers fail to make "timely and complete payment of earned wages"). The Act defines "wages" to mean "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 Ill. Comp. Stat. Ann. 115/2. It does not define "owed." *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292, ¶ 14 ("The plain and ordinary meaning of the word 'owe' is 'to be under obligation to pay or repay in return for something received: be indebted in the sum of.'").

Carrasco alleges that there were times at which she was required to be at work, that Freudenberg had agreed to pay her for being there even if she was not actively working, and that she was not paid the wages she was due under that agreement. [66] ¶¶ 54, 56; [81] at 4–5.[3] Carrasco did not plead each specific instance on which

_____

evidentiary support any facts he pleases that are consistent with the complaint").

[3] Even though Carrasco is not allowed to amend her complaint by making a new argument

she was underpaid, or the exact time she was required to be at work each day, or the reason she thought she had to be there at that time. *See* [66]; [75] at 9–10. But she did not need to "include every detail or fact" relevant to her allegations so long as she "present[ed] a story that holds together." *Reed*, 906 F.3d at 548.

In order to state a claim under the Act, Carrasco needs to show that she and Freudenberg had a valid contract or employment agreement. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). The term "agreement" is broader than the term "contract." *Id.* (quoting *Zabinsky v. Gelber Grp., Inc.*, 347 Ill.App.3d 243, 249 (1st Dist. 2004)). An agreement "requires only a manifestation of mutual assent," *Zabinsky*, 347 Ill.App.3d at 250, and does not need to be "formally negotiated." *Landers–Scelfo v. Corporate Office Sys., Inc.*, 356 Ill.App.3d 1060, 1067–68 (2nd Dist. 2005). An employer may communicate to the employee the terms of such an agreement via conduct alone. *Id.*; *Wharton v. Comcast Corp.*, 912 F.Supp.2d 655, 660 (N.D. Ill. 2012); *Schultze v. ABN AMRO, Inc.*, 2017 IL App (1st) 162140, ¶ 23, *appeal denied*, 93 N.E.3d 1080 (2017) ("employers and employees may manifest mutual assent by conduct alone, including past practice").

Freudenberg's employee handbook is not an enforceable contract. *See* [75-1].[4] It contains an explicit disclaimer making clear that it is "not a contract or an offer of employment" or an "enforceable promise of any kind." [75-1] at 7. That disclaimer forecloses the possibility that either party could have reasonably believed that the employee handbook indicated an assent to be bound. *See Garcia v. Kankakee Cty. Hous. Auth.,* 279 F.3d 532, 536 (7th Cir. 2002) ("[d]isclaimers of this kind are enough in Illinois to show that the handbook does not create legal rights"). In the cases cited where employee handbooks were found to constitute a binding contract, the handbooks did not contain a similarly explicit disclaimer. *See Zamudio v. Nick &*

---

in her briefing, *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993), the points she raises in her response are not amendments; they are elaborations consistent with allegations raised in the complaint. *See Geinosky*, 675 F.3d at 745 n.1, *Early,* 959 F.2d at 79. *See also Harrell*, 13 F.3d at 236 (the plaintiff may "submit documents which show that the complaint as worded encompasses a claim that would entitle him to relief").

[4] Defendant attached to its motion to dismiss a copy of Freudenberg's employee handbook. [75-1]. Plaintiffs do not object to the exhibit. *See* [81]. Although documents outside of the pleadings normally may not be considered as part of a motion to dismiss, documents that are "critical to the complaint and referred to in it" may be considered. *Geinosky*, 675 F.3d at 745 n.1 (7th Cir. 2012). The narrow exception is intended for "cases interpreting, for example, a contract." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). The handbook is referred to (and quoted) in plaintiffs' second amended complaint, [66] ¶ 55, and count IV of that complaint turns in part on language contained in the handbook that was omitted from the complaint. I consider the employee handbook attached as an exhibit to Freudenberg's motion to dismiss.

*Howard LLC,* No. 15 C 3917, 2015 WL 6736679, at *4 (N.D. Ill. Nov. 4, 2015); *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482, 491 (1987) ("the handbook contains no disclaimers to negate the promises made"). It does not matter that the disclaimer was not labeled a disclaimer, because the bold and underlined text makes its effect apparent without the need for a label. Carrasco cannot use the language within the employee handbook to support her claim. *See, e.g.,* [66] ¶¶ 54, 55.[5]

But that does not mean that Carrasco cannot establish that an agreement existed. Even if a disclaimer in a handbook prevents the handbook from becoming a binding contract, that same disclaimer "does not preclude an agreement by two or more persons regarding terms set forth in the handbook relating to compensation to which both have otherwise assented." *Montero v. JPMorgan Chase & Co.,* No. 14 CV 9053, 2016 WL 7231604, at *6 (N.D. Ill. Dec. 14, 2016) (quoting Ill. Admin. Code tit. 56, § 300.450); *Watts v. ADDO Mgmt., L.L.C.,* 2018 IL App (1st) 170201, ¶¶ 18–19 (Illinois courts look to regulations issued by Illinois's Director of Labor for guidance when interpreting the Illinois Wage Payments and Collections Act). Carrasco's second amended complaint mentions a section of the employee handbook, [66] ¶ 55, and even discusses legal principles related to whether employee handbooks can constitute contracts under the Act, *id.* ¶ 58, but does not explicitly limit her claim to that handbook. *See* [66] ¶¶ 51–62. Freudenberg's reading of the complaint is too narrow, and Carrasco's response to the motion to dismiss confirms that some portion of her claim is premised on an agreement that exists beyond the text of the employee handbook and was communicated via conduct. [81] at 3–5. Carrasco may still have stated a claim under the Act if she has plausibly alleged that someone at Freudenberg, either through their words or actions, made Carrasco and others the same promise as that contained in the employee handbook. *See* [75-1] at 46.

---

[5] Freudenberg cites agency regulations to suggest that the handbook is merely a reference to the commonly understood concept of reporting or show-up pay. *See* 29 C.F.R. § 778.220 ("an employee may be paid a minimum of a specified number of hours' pay at the applicable straight time or overtime rate on infrequent and sporadic occasions when, after reporting to work at his scheduled starting time on a regular work day or on another day on which he has been scheduled to work, he is not provided with the expected amount of work"). But such regulations are of little help in determining the terms of any agreement that may have existed between Carrasco and Freudenberg. At most, they show that it is possible to have an agreement according to which an employer is obligated to pay employees for showing up, even if the employee does not have anything to do once they are there. They do not establish that Carrasco and Freudenberg did not have such an agreement, or that any such agreement would have been contrary to federal law. If anything, they tend to suggest Carrasco's expectation was reasonable because show-up pay is common enough to be discussed in federal regulations.

Carrasco attached archived time card reports to her response brief, but those reports show that the rounding errors she complains about were rare and sporadic. *See* [81-2]. They also contain a column that indicates the employee's "schedule," and that appears to contain start and finish times for each shift. *Id.* The reports show that the errors mostly (if not exclusively) occurred when an employee showed up between ten and fifteen minutes before the employee's scheduled start time or stayed a few minutes after the employee's shift ended. *See id.* So even when there were rounding errors, those errors do not appear to have resulted in an employee being credited fewer hours than the employee was scheduled to work. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations"). *See also Weil v. Metal Techs.*, 925 F.3d. 352, 357 (7th Cir. 2019) (under a comparable statute, the Fair Labor Standards Act, "employees who clock in early do not have to be paid so long as they are not working")[6]; *Hirst*, 910 F.3d at 965 (also under the Fair Labor Standards Act, it is not enough to claim to have "worked many hours" and cite "several weeks in which [one was] paid the minimum wage"). In other words, the reports render implausible Carrasco's claim that she and her coworkers were not paid for time they were required to be at work because those reports show that she and her coworkers were paid for the time they were scheduled (i.e., required) to be at work. Nowhere in Carrasco's second amended complaint or briefing does she plausibly allege that Freudenberg required her or her coworkers to be at work outside of those scheduled times.

With regards to the rounding errors themselves, neither party's math adds up. For instance, during the week of June 8, 2015 (discussed in Carrasco's response brief), one employee appears to have clocked in about ten minutes early every day. [81-2] at 2. Carrasco says Freudenberg did not give that employee credit for any of those additional ten-minute increments. *See* [81] at 4. Freudenberg says they gave that employee credit for all of them. [84] at 9–10 n.8. According to the reports, the employee in question appears to have worked one eight-hour day, two ten-hour days, and two twelve-hour days, and appears to have clocked in ten minutes early on each day. [81-2] at 2. The employee appears to have been credited with only twelve hours

---

[6] *Weil* was decided under the standard for reviewing motions to decertify, and that is not the standard applicable here. But there is "nothing wrong" with relying on cases that apply a more stringent standard at the pleading stage, so long as those cases are used only "to explain the substantive legal standards that apply to the case." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). And here, I do not apply *Weil* or *Hirst* to determine whether Carrasco has stated a claim under Illinois's Wage Payments and Collections Act; I cite them only to show that, when applying similar statutes, courts have considered and rejected the argument that employers are obligated to pay employees for time they are not scheduled (nor otherwise required) to be at work.

and thirty minutes of overtime pay, when one would have expected that employee to have been credited with twelve hours and fifty minutes of overtime pay. *Id.*

The reports suggest that there was something strange about the way Freudenberg was paying Carrasco and her coworkers. But they contradict a central assumption of Carrasco's claim: that she was owed payment for the hours she was working. When considered together with the reports Carrasco has submitted, the allegations in her complaint do not support a plausible claim that Freudenberg required Carrasco and her coworkers to arrive at work ten minutes early each day. Absent a factual allegation that someone at Freudenberg told Carrasco and her coworkers that they had to show up ten minutes earlier than their scheduled start time (or stay ten minutes later than their scheduled end time), her earned-but-unpaid-wages story does not hold up.

The Act also prohibits employers from making unauthorized deductions from wages or final compensation. 820 Ill. Comp. Stat. Ann. 115/9; *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). (There are exceptions to that general rule, but none of them apply to the facts as alleged in the complaint. *See* 820 Ill. Comp. Stat. Ann. 115/9.) Carrasco's failure to plausibly allege that Freudenberg broke any promise to her is just as fatal to her deduction claim because, even under that section of the Wage Payment and Collections Act, the only prohibited deductions are those that come from wages, and wages include only "compensation owed." 820 Ill. Comp. Stat. Ann. 115/2. For the reasons already discussed, Carrasco has failed to allege that she was owed the money she says she was not paid under the Illinois Wage Payment and Collection Act.

Moreover, a "deduction" refers to "withholdings from an employee's earnings, not the employer's method of *determining* an employee's earnings." *Osorio v. The Tile Shop, LLC*, No. 18-2609, 2019 WL 4584678, at *3 (7th Cir. Sept. 23, 2019) (emphasis in original). It is a "term of art" used "to refer to expressly stated categories of expenses withheld from an employee's pay." *Id.* at *4. As Freudenberg points out, even if Carrasco's allegations are taken as true, her claim is that Freudenberg was failing to credit her for hours worked, not that Freudenberg was deducting money from wages she had already earned. Her deduction claim fails, too.

Carrasco's Wage Payment and Collections Act claim (count IV of the second amended complaint) is dismissed without prejudice. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).

ENTER:

Date:   October 24, 2019

Manish S. Shah
U.S. District Judge